## JOHN KIMBALL *versus* THE SECOND CONGREGATIONAL PARISH IN ROWLEY.

The *St.* 1817, *c.* 189, providing for an appraisement of pews when about to be destroyed for the purpose of repairing and improving the meetinghouse, applies, *it seems,* to the case of a territorial parish.

But if not, it is nevertheless competent and prudent for such a parish to proceed according to this statute, and in an action by a pew-owner against the parish for destroying his pew, the appraisement may be given in evidence, in connexion with the testimony of the appraisers, in justification of the parish and to show the value of the pew.

Where a parish proceeds legally in destroying a pew, they may rightfully make a tender of the value to the owner and thereby bar his action for damages.

THIS was an action on the case against the defendants for destroying a pew in their meetinghouse.

At the trial, before *Putnam* J., the plaintiff proved, that in May 1832, he was seised of the pew, and that the defendants destroyed it, pursuant to a parish vote.

It appeared that the pew was pulled down for the purpose of making the structure of the pews more convenient, which was expedient, and not from necessity or malice.

The defendants proved, that in repairing their meetinghouse they voted and proceeded according to *St.* 1817, *c.* 189.

Notice of the meeting of the committee chosen by the defendants to appraise the pews, was given by an advertisement being posted at the meetinghouse on Sunday, the day preceding the day of the meeting. The plaintiff, at that time, was not a member of the parish, but was a member of and worshipped with another religious society. His family usually attended worship with the defendants.

The appraisement was admitted in evidence, and two of the appraisers were examined to prove the proceedings of the committee, though objected to by the plaintiff. On their cross-examination they stated the grounds on which they estimated the value of the pews.

Kimball
v.
Second Par.
in Rowley.

After the appraisement the defendants tendered to the plaintiff the sum of $45, the appraised value of the pew, which he refused to accept.

The plaintiff objected to the competency of the evidence of the appraisal and tender. Both parties introduced other evidence as to the value of the pew.

The judge instructed the jury, that the proceedings of the committee of appraisers were competent evidence to be weighed by the jury, in estimating the value of the plaintiff's pew ; that the notice of their meeting was sufficient ; and that if $45, tendered as above mentioned, was the full value of the pew, the plaintiff was barred of this action by the tender.

The jury returned a verdict for the defendants, allowing the plaintiff the sum tendered.

If the evidence as to the appraisal or as to the tender, was incompetent, or if the instructions to the jury were erroneous, a new trial was to be granted ; otherwise judgment was to be rendered according to the verdict.

*Nov. 6th,*
*1834.*

*Saltonstall* and *B. Merrill,* for the plaintiff. The altera tions in the meetinghouse being expedient only and not necessary, the plaintiff is entitled to recover, in an action of the case, the value of his pew ; and this, like other questions of value when vague and uncertain, is to be settled by the jury upon evidence under oath. The appraisement, not being under oath, was admitted erroneously, inasmuch as the *St.* 1817, *c.* 189, does not apply to territorial parishes. *Howard* v. *First Parish in N. Bridgewater,* 7 Pick. 138 ; *Daniel v. Wood,* 1 Pick. 104, [2d ed. and notes ;] *Gay* v. *Baker,* 17 Mass. R. 435 , *Wentworth* v. *First Parish in Canton,* 3 Pick. 345.

The damages being uncertain, a tender could not be made. Howe's Pract. 402 ; Tidd's Pract. 563 ; *Hutton* v. *Bolton,* 1 H. Bl. 299, note ; *Bowles* v. *Fuller,* 7 T. R. 335 ; *Salt* v. *Salt,* 8 T. R. 47 ; *Fail* v. *Pickford,* 2 Bos. & Pul. 234 ; *Strong* v. *Simpson,* 3 Bos. & Pul. 14.

*Choate, contrà,* insisted that, upon the authority of some of the cases above cited, the defendants had a right to take down the plaintiff's pew, making him an indemnity ; and that not being wrongdoers, it was competent for them to make the tender ; *Holdfast* v. *Morris,* 2 Wils. 115 ; *Johnson* v. *Lancaster,* 1

Str. 576 ; *St.* 1830, *c.* 85, and *c.* 128 ; that the *St.* 1817, c. 189, may be applied to the protection of territorial parishes ; and if not, that the appraisement was nevertheless admissible in evidence, to repel the charge of malice on the part of the defendants and to show that they followed the equitable provisions of this statute, made for the regulation of similar bodies ; *Gray* v. *Portland Bank*, 3 Mass. R. 374 ; Jeffries' case, 5 Coke, 66 ; *The State* v. *Tudor*, 5 Day, 334.

MORTON J. afterward drew up the opinion of Court. The soil on which the meetinghouse stands and the building itself are the property of the parish ; they only have the right to regulate the use of the meetinghouse, to make repairs, alterations and improvements, and to determine when it shall give place to a new one. Each pew-holder however has a property in his pew and a right to the exclusive occupation of it. It is, except in Boston, real estate, and may be transferred, by all the modes of conveyance, by which other real estate may be transferred, and with greater facilities for perpetuating the evidence of the title. *St.* 1795, *c.* 53 ; 1831, *c.* 59. But it is only a qualified property, subject to the paramount right of the parish. And they, in their general dominion and superintendence, may remove or change the form of the pews for the purpose of making repairs or rendering the interior more convenient, or they may destroy them altogether, for the purpose of erecting or substituting a more commodious or elegant edifice. In doing these things they are in the exercise of their legal rights and commit no tort. *Gay* v. *Baker*, 17 Mass. R. 435 ; *Daniel* v. *Wood*, 1 Pick. 102.

But the pew-owner cannot be despoiled of his property. In some respects his rights are superior to those of the parish, and they must exercise their general ownership in subordination to them and be restricted to the general purposes for which churches are erected and parishes created. *Revere* v. *Gannett*, 1 Pick. 169. And in taking from the owner the use of his pew, they are bound to substitute its equivalent in money. He can only be deprived of it without compensation, when the meetinghouse has become so old, decayed or ruinous as to be unfit for use, and when in fact the pew has ceased to be of any use or value as a pew. *Howard* v. *The First Parish in N. Bridgewater*, 7 Pick. 138.

Kimball
*v*
Second Par.
in Rowley.

How are the parish to ascertain the value of pews, that they may give to the owners an adequate indemnity ? Must they determine for themselves and act on the peril of a suit from every dissatisfied pew-owner ? Can they compel him to receive compensation, and may they make a lawful tender of it ? An answer of these questions in one way would expose the parish to great expense and hazard, and greatly tend to provoke litigation.

The provisions of *St.* 1817, *c.* 189, are calculated to remedy these inconveniences and are as well adapted to parishes and religious corporations, and as much needed by them, as by unincorporated proprietors. The terms of the statute too seem to me to be broad enough to include all religious incorporations. Parishes and religious societies are undoubtedly " proprietors of churches," as well as individuals. It is true that the case of *Wentworth* v. *First Parish in Canton,* seems to confine the benefits of the statute to unincorporated proprietors ; but so salutary a statute should be construed liberally, and I can see no sufficient reason for thus restricting it. The case of *Daniel* v. *Wood* is as strong in favor of extending it to corporations, as *Wentworth* v. *First Parish in Canton,* is for the more limited construction. A suggestion in the close of the opinion in the latter case may explain the apparent inconsistency and reconcile the two decisions. Parishes having before the right to remove pews for certain purposes, were not deprived of it by the passage of the statute. They may therefore still rely upon their original right, even if they also have the statute right. They were not bound to avail themselves of the new provisions ; but might well justify themselves in the proper exercise of their former rights. And this was all that was necessary to the decision of that case.

But whether this statute applies or not, the defendants are justified in their conduct, and whether they acted under the statute or not, they could not have adopted a wiser course than the one pointed out by its provisions.

If the statute applies, the appraisal, being a necessary part of the proceedings under it, is undoubtedly competent evidence. But if it does not apply, the appraisal, being a part of a proper and judicious course of precautionary proceedings, was

admissible to make out the defendants' justification. And among the evidence on the question of the value of the pew, I can see no objection to the admission of this appraisal, supported as it was by the oath of two of the appraisers. It might not in itself have any force, but as an original memorandum made at the time, it might be corroborative of the oaths of the parties, and add some strength to their testimony.

The parish having proceeded legally throughout, were guilty of no tort. In the exercise of their rights, they had incurred a pecuniary responsibility and rendered themselves liable to pay the plaintiff for his pew, as much as it was worth. Having legally taken the pew by virtue of the power vested in them, and thereby become the legal owners of it, they must be deemed statute purchasers for a fair compensation. On general principles, therefore, they had a right to make a tender and to bar a recovery against them by doing their duty and discharging their obligations, as far as it depended on them, before the commencement of this suit. It is not unlike cases which occur every day, where goods are purchased without agreeing upon a price, and where the purchaser is liable to pay what they are reasonably worth. In all cases of *quantum meruit* and *quantum valebant*, a tender may be made.

But it is useless to pursue the discussion, for the statute of 1830, *c.* 85, entirely covers the case and is decisive. It authorizes a "tender of payment, of the whole sum due, on account of any debt or demand payable in money." This was a "debt or demand," and it was "payable in money." A tender therefore might lawfully be made. Evidence of it having been admitted, and the jury, under instructions which in our opinion were correct, having found that a sufficient sum was tendered, there must be .

*Judgment on the verdict.*